## NEW HAMPSHIRE INSURANCE CO. *v.* W. D. Frisby

75-10                                     522 S.W. 2d 418

Opinion delivered May 5, 1975

*Shackeford, Shackeford & Phillips,* for appellant.

*Denver L. Thornton,* for appellee.

CARLETON HARRIS, Chief Justice. This action is based on a claim under a policy of insurance covering a Caterpillar bulldozer. W. D. Frisby, appellee herein, was issued a policy of insurance by New Hampshire Insurance Company, appellant herein, granting certain coverage in the amount of $7,000, coverage including "collison of the equipment with any other vehicle or object, upset, overturn (excepting as may be caused by or resulting from landslide)", such policy being in effect at all times hereinafter mentioned. On October 1, 1973, George Black, Jr., an employee of appellee, was operating the said bulldozer at a farm a few miles from El Dorado, and a little after 9:00 A.M. Black, backing the dozer up near the edge of a field in high grass for the purpose of getting in front of some brush, backed over and struck a valve or gauge which protruded above the ground 10 to 14 inches, and which was attached by a connecting pipe to a 20 inch pressurized transmission line, containing liquid propane. This caused a rupture permitting the gas to escape. A white cloud immediately spurted upward, and covered the bulldozer. Black cut off the motor, ran to the telephone and called Frisby. Frisby went to the scene and found the dozer frozen, "covered with ice[1] and the gas was still going up." The Caterpillar was covered with ice and was frozen to the ground. According to Frisby:

> "We immediately moved another dozer of ours to the scene and began trying to pull it off away from the place where it was frozen to the ground and, of course, the tracks were just solid ice. The tracks wouldn't move and there wasn't any way to move it. *** Well, we have a D-5 caterpillar and we was trying to pull it with a winch on it, also Texas Eastern had two winch trucks there. We had those hooked to it. *** We called a real

---

[1] The liquid propane froze when exposed to the atmosphere.

big winch truck in and with our dozer and these other trucks we managed to break it loose and it didn't roll. It just skidded, just slid on the ground, and we got it back up near the road."

The dozer did not completely thaw until the third day, and according to appellee, the engine block was "busted in several spots", the radiator completely frozen and cracked, and other damage, the cost of repairs exceeding coverage under the policy. Appellant denied liability and Frisby instituted suit for $6,750.00,[2] together with 12% penalty, reasonable attorney's fee, interest and costs. The company answered asserting that the loss was not directly caused by collision with an object, and therefore not covered within the terms and provisions of the policy. At the close of appellee's case, appellant resting without the introduction of any evidence, the company moved for a directed verdict which was denied and the jury returned a verdict for the full amount sought. From the judgment entered in the amount of $6,750.00, together with 12% penalty in the amount of $810.00, $1,500.00 attorney's fee, making a total judgment of $9,060.00, together with costs, appellant brings this appeal. For reversal, it is simply asserted that damage by freezing was not loss or damage directly caused by collision with an object.

Appellant relies upon *Mercury Insurance Company* v. *McClellan*, 216 Ark. 410, 225 S.W. 2d 931, and *Habaz* v. *Employers' Fire Insurance Company*, 243 F. 2d 784. We do not find either case to be pertinent to the issue at bar. In the first case (which was actually a consolidation of two cases), a truck was being repaired in a garage in Warren, when a devastating tornado struck the city, destroying the garage building and substantially damaging the truck. In the other suit which had been consolidated for trial, a parked automobile was picked up by the tornado, rolled over several times, blown into the top of a tree, and completely destroyed. No coverage for loss arising from a windstorm or tornado was provided in the policy, and this court held that since the tornado was the efficient and proximate cause of the damage, and there being no windstorm coverage, there was no liability on the part of the company. The second case involved a

---

[2]There was a $250.00 deductible.

cloudburst in Hot Springs, and subsequent flooding conditions. The owner of a shop on Central Avenue suffered quite a bit of damage to his merchandise from the water. He held a policy of insurance with an extended coverage endorsement, the endorsement providing "Loss by aircraft or by vehicles shall include only direct loss resulting from actual physical contact of an aircraft or a vehicle with the property covered hereunder or with the building containing the property covered hereunder ***." The opinion cites the plaintiff's (appellant's) contention as follows:

> "The pleadings, admissions, answers to interrogatories and appellant's pre-trial deposition established that as the time of the flood an automobile was propelled by the force of the flood waters onto the sidewalk in front of appellant's place of business in such a manner that it diverted flood waters against the door of appellant's shop, that the door was thus caused to break down, letting water into the shop with the resultant damage. Flood water entered some but not all of the other buildings on Central Avenue in the vicinity of the appellant's shop. The automobile that lodged in front of appellant's shop struck the front of the building, causing a slight crack in one of the small white tiles below one front show window but no water entered the building on that account. All of the water entered through the door opening, some little distance from the automobile itself."

The court held that the striking of the building by the automobile was not the cause of the damage; rather, the damage was occasioned by the flood water, which was the proximate cause of the whole occurrence.

These situations are not present in the litigation now before us. Here, the initiating cause of the damage to the tractor was the striking of the valve, this collision with the valve, in itself, setting in motion the events, without the intervention of any independent force, which damaged the bulldozer; the damage would not have occurred except for the bulldozer breaking the valve-gauge. Certainly, the striking of the valve by the bulldozer was a collision with an "object" and the

damage sustained was, as stated in the policy, "directly caused by the risks and perils insured against."

In Blashfield Automobile Law and Practice, Volume 7, § 312.4, p. 487, it is stated:

"An 'object' may be defined as any tangible thing, visible or capable of discernment by the senses, which offers an impediment or resistance to another object."

In *Washington Fire & Marine Insurance Co.* v. *Ryburn,* 228 Ark. 930, 311 S.W. 2d 302, we held that damages to a truck which slipped off the highway and plunged into a ditch filled with water were caused by the collision of the truck "with another object". "Directly caused" has been construed to be fairly synonymous with the term "proximately caused." *Gulfport Portland Cement Co.* v. *Globe Indemnity Co.,* 149 F. 2d 196. We have defined "proximate cause" as "A cause which, in a natural and continuous sequence, produces damage and without which the damage would not have occurred." See AMI 2d Ed., § 501, p. 39.

In accordance with what has been said, we hold that the damage to the bulldozer was occasioned by the collision with an object, and the loss is thus covered under the provision of the policy, heretofore referred to. Appellee is awarded an additional attorney's fee in the amount of $750.00 for services rendered in this court.

Affirmed.