604 F.Supp. 764 (1985)
MONETARY MANAGEMENT GROUP OF ST. LOUIS, INC., Plaintiff,
v.
KIDDER, PEABODY & CO., INC., and William R. Martin, Defendants.
No. 84-558C(1).
United States District Court, E.D. Missouri, E.D.
March 18, 1985.
*765 Ellen Bonacorsi, St. Louis, Mo., for plaintiff.
Jim Shoemaker, St. Louis, Mo., for defendants.

MEMORANDUM
NANGLE, Chief Judge.
This case is now before this Court on plaintiff's and defendants' motions for summary judgment.[1] The primary issues raised by said motions are: 1) whether plaintiff is the real party in interest and has standing to litigate the case at bar; and 2) whether the remedy sought by plaintiff is available. For the reasons discussed infra, this Court holds that plaintiff is the real party in interest, and thus has standing to litigate this action, and that plaintiff is not barred from obtaining the remedy that it seeks. However, plaintiff is not entitled to summary judgment on the merits of its complaint.
The facts of this case are painfully simple. On or around May 11, 1983, defendants, through Martin, a registered representative employed by Kidder, Peabody, effected the purchase of two (2) bonds for plaintiff's account, $125,000.00 face value of Utah Power and Light Company bonds and $75,000.00 face value of Puget Sound Power and Light Company bonds. Plaintiff alleges that defendants misrepresented a material fact by stating that said bonds were marginable, or omitted to state a material fact by failing to advise plaintiff that said bonds were not marginable.[2] Plaintiff is an investment advisor who, in purchasing said bonds, was acting on behalf of its client, Basler Electric Company. Basler maintained a margin account with plaintiff and the bonds purchased by defendants for plaintiff's account were intended for Basler's margin account. Upon learning that said bonds were not marginable, plaintiff contacted defendants and demanded that *766 the trades be reversed. Defendants refused to comply with this demand. Plaintiff then brought this action to rescind the sale of said bonds, to recover the purchase prices of the bonds and the margin interest paid, including interest thereon, and to recover their costs and attorney's fees.
Plaintiff's complaint consists of three (3) counts. Count I alleges violations of § 12(2) of the Securities Act of 1933. 15 U.S.C. § 77l(2). The second and third counts of plaintiff's complaint are pendent state law claims. Count II alleges that defendants violated § 409.411(a). Mo.Rev. Stat. § 409.411(a). Count III alleges that plaintiff is entitled to rescission of the bond trades under the Missouri common law theory of negligent misrepresentation.
Under Rule 56 of the Federal Rules of Civil Procedure, a movant is entitled to summary judgment if he can "show that there is no genuine issue as to any material fact and that [he] is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). See also Poller v. Columbia Broadcasting System, Inc., 368 U.S. 464, 82 S.Ct. 486, 7 L.Ed.2d 458 (1962). In passing on a motion for summary judgment, a court is required to view the facts and inferences that may be derived therefrom in the light most favorable to the non-moving party. Buller v. Buechler, 706 F.2d 844, 846 (8th Cir.1983); Vette Co. v. Aetna Casualty and Surety Co., 612 F.2d 1076, 1077 (8th Cir.1980). The burden of proof is on the moving party and a court should not grant a summary judgment motion unless it is convinced that there is no evidence to sustain a recovery under any circumstances. Buller, 706 F.2d at 846. However, under Rule 56(e), a party opposing a motion for summary judgment may not rest upon the allegations of his pleadings but "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). See also 10A Wright, Miller and Kane, Federal Practice and Procedure: Civil 2d, § 2739 (1983).
Defendants first argue that plaintiff is not the real party in interest with respect to its federal securities claim in Count I, because plaintiff purchased the bonds in question for the account of its customer, Basler Electric Company, rather than for its own account. Section 12(2) of the Securities Act of 1933 defines a proper plaintiff thereunder as "the person purchasing such security from" the defendant. 15 U.S.C. § 77l(2). Defendants equate "purchaser" status with ownership. For example, defendants rely on the cases of Blau v. Lamb, 314 F.2d 618 (2nd Cir.1963), and Matthysse v. Securities Processing Services, Inc., 444 F.Supp. 1009 (S.D.N.Y.1977). In Blau, a plaintiff stockholder brought suit under § 16(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78p(b), for the benefit of the issuing corporation against several defendants, who were officers, directors, or 10% shareholders of said corporation, to recover "short swing" profits. The Blau plaintiff had purchased his shares in said corporation through a margin account with a broker who held the plaintiff's shares in street name. Section 16(b) of the 1934 Act expressly requires a plaintiff to be an "owner" of the stock in question to sue for short swing profits on behalf of the issuing corporation. Blau held that the remedial purpose of § 16(b) required a liberal interpretation of the term "owner" and that said term is not limited to beneficial ownership. Thus, the plaintiff in Blau was allowed to seek recovery of short swing profits. With respect to the real party in interest issue, the Blau court stated that all a defendant is entitled to is "`such a party plaintiff as will render the judgment final and res adjudicata of the right sued upon'". Blau, 314 F.2d at 620 (citation omitted).
In the opinion of this Court, Blau is not particularly relevant to the issue of plaintiff's standing or real party in interest status in the case at bar. Unlike § 16(b) of the 1934 Act, § 12(2) of the 1933 Act does not expressly require that a plaintiff be an owner. It merely requires that a plaintiff be a purchaser. Moreover, Blau held that a § 16(b) suit could be maintained by a customer, but it did not hold that the broker, in whose name the purchase was made, could not sue under § 16(b).
*767 This Court also agrees with plaintiff that Matthysse is not at all apposite to the case at bar. Matthysse was a diversity action brought to recover damages for the defendant's alleged conversion of securities claimed to be the property of the plaintiff. The case dealt with the issue of who is the owner of securities in a broker/customer relationship for purposes of Article 8 of the Uniform Commercial Code and did not involve any real party in interest issues or any federal or state securities laws violations.
The analytical approach taken by the Blau court, however, is applicable to the case at bar. Just as the remedial purpose of § 16(b) compelled the Blau court to extend the term owner beyond a beneficial owner, the remedial purpose of § 12(2) warrants extension of the term purchaser to one who purchases stock in its own name on behalf of another. In addition, this Court agrees with Blau's approach to the real party in interest question. Here, because Basler Electric Company is in privity with plaintiff, any judgment rendered in this case would be res judicata as to Basler Electric Company. Finally, although the cases relied on by plaintiff are not on "all fours" with the facts of this case, they do tend to support the proposition that a purchaser for purposes of § 12(2) includes a representative or an agent of a purchaser. Thomas v. Roblin Industries, Inc., 520 F.2d 1393, 1396 (3rd Cir.1975); A.T. Brod & Co. v. Perlow, 375 F.2d 393, 397 (2nd Cir.1967); Odette v. Shearson, Hammill & Co., 394 F.Supp. 946, 959 (S.D.N.Y. 1975); Bache & Co., Inc. v. International Controls Corp., 324 F.Supp. 998 (S.D.N.Y. 1971). Accordingly, this Court holds that plaintiff is a "purchaser" within the meaning of § 12(2) of the 1933 Act and that it is the real party in interest for prosecuting the instant action.
Defendants' next argument is a variation on their real party in interest argument, but goes to the availability of the remedy sought by plaintiff. Section 12(2) provides, in pertinent part, as follows:
[A plaintiff] may sue either at law or in equity in any court of competent jurisdiction, to recover the consideration paid for such security with interest thereon, less the amount of any income received thereon, upon the tender of such security, or for damages if he no longer owns the security.

15 U.S.C. § 77l(2) (emphasis added). Thus, a § 12(2) plaintiff is entitled to rescission but not damages if said plaintiff owns the stock in question, and said plaintiff is entitled to damages but not rescission if said plaintiff no longer owns the stock. Wigand v. Flo-Tek, Inc., 609 F.2d 1028, 1035 (2nd Cir.1979); Mott v. Tri-Continental Financial Corp., 330 F.2d 468 (2nd Cir.1964). Defendants argue that deposition testimony in the case at bar establishes that plaintiff no longer owns the bonds in question. Therefore, defendants argue, plaintiff is not entitled to rescission and plaintiff's complaint should be dismissed because it does not seek damages.
Despite the facts that this case has been pending since March, 1984, and that both parties have engaged in extensive and contumacious discovery, the precise status and circumstances in which the bonds in question are presently held cannot be agreed upon. Defendants rely on excerpts from the depositions of several of plaintiff's officers and employees and an officer of Basler Electric Company to support its argument that plaintiff no longer owns the bonds in question. Thomas G. Wright, President of plaintiff, stated that, to the best of his knowledge, the bonds in questions are in an account at A.G. Edwards in the name of Basler Electric Company. Ray Hayes, Portfolio Manager for plaintiff, stated that it was his understanding that Basler Electric Company owns the bonds. Randall Kirkland, Financial Planner for plaintiff, stated that it was his understanding that Basler Electric Company owns the bonds but that he was not certain. Jon Thomas, Chairman of the Board of plaintiff, stated that he does not know in whose accounts or in whose name the bonds in question are held. Finally, Ray Vollet, Vice President of Basler Electric *768 Company, Inc., stated that plaintiff invested Basler Electric's money and that it was his belief that Basler Electric Company owns the bonds in question.
Plaintiff on the other hand, submitted an affidavit from James A. Lanser, an employee in the Margin Department at A.G. Edwards & Sons, Inc., who states that he is familiar with the facts surrounding the transfer of the bonds in question. He states that the bonds were transferred from an account maintained by plaintiff with defendants to an account maintained by plaintiff at A.G. Edwards & Sons, Inc. He further states that the bonds have been held, since their transfer from defendants to A.G. Edwards & Sons, Inc., in street name.
From the foregoing it would appear that there is a disputed issue of fact, namely the current ownership of the bonds in question. However, this is a non-jury case and this fact question would ultimately be resolved by this Court. In addition, neither party has indicated that additional evidence on this question would be forthcoming at a trial on the merits. Under these circumstances, it is proper for this Court to determine who owns the bonds for purposes of obtaining relief under § 12(2) on the record now before this Court.
Just as the phrase "person purchasing" in § 12(2) should be interpreted to achieve the broad remedial purpose of § 12(2), it is the opinion of this Court that the term "owns" in the same provision should be interpreted liberally to achieve its remedial purpose. Obviously, the reason that a non-owner is limited to a damage remedy is that a non-owner cannot tender the security back to the defendant and thereby accomplish rescission. In the opinion of this Court, a purchaser is an owner for purposes of § 12(2) if said purchaser possesses sufficient control or authority to effectuate a tender of the securities in question. Elusive notions of legal, equitable, or beneficial title should not be controlling in a § 12(2) case. The case at bar is a striking illustration of how such notions can unnecessarily complicate a factually simple case. A total of four (4) parties have some kind of interest in the bonds in question: 1) plaintiff; 2) A.G. Edwards & Sons, Inc.; 3) the defendants; and 4) Basler Electric Company, Inc. Where so many parties have had a hand in the transaction, questions of title are in a "twilight zone" and the discovery in this case indicates that each of said parties is understandably reluctant to state an opinion as to which one is the owner. Accordingly, this Court holds that the touchstone is whether plaintiff has sufficient indicia of ownership to effectuate a tender of the securities in question if it were to prevail on the merits of its right to rescission.
In the case at bar, plaintiff has sufficient indicia of ownership to effectuate a tender of the bonds in question. It appears that after they were purchased by plaintiff they were held by defendants in an account that plaintiff maintained at Kidder, Peabody. Subsequently, the bonds were transferred to an account maintained by plaintiff at A.G. Edwards & Sons, Inc. At all relevant times the bonds have been held in street name. This Court is satisfied that Basler Electric Company has given plaintiff whatever authority[3] it needs to tender the bonds back to defendants and obtain rescission for Basler Electric's account. Accordingly, this Court holds that plaintiff is an owner for purposes of obtaining rescission under § 12(2).
Plaintiff's motion for summary judgment seeks entry of a judgment in its *769 favor on all three counts in its complaint. To prevail on its § 12(2) claim in Count I, plaintiff must prove the following elements:
1) defendants offered or sold a security;
2) by the use of any means of communication in interstate commerce;
3) through a prospectus or oral communication;
4) by making a false or misleading statement of a material fact or by omitting to state a material fact necessary in order to make the statements, in light of the circumstances under which they were made, not misleading;
5) plaintiff did not know of the untruth or omission; and
6) defendants knew, or in the exercise of reasonable care, could have known of the untruth or omission.
Alton Box Board Co. v. Goldman, Sachs and Co., 560 F.2d 916 (8th Cir.1977); Gridley v. Sayre & Fisher Co., 409 F.Supp. 1266 (D.S.D.1976). The elements of plaintiff's claim in Count II, which is based on § 409.411(a) of the Missouri Revised Statutes, are identical to those of plaintiff's federal securities claim in Count I. See Dunn v. Bemor Petroleum, Inc., 680 S.W.2d 304, 306-07 (Mo.Ct.App.1984). In addition, the elements of plaintiff's claim in Count III of its complaint are arguably encompassed by those in Counts I and II. See Hudspeth v. Zorn, 292 S.W.2d 271 (Mo.1956); Osterberger v. Hites Construction Co., 599 S.W.2d 221 (Mo.Ct.App.1980).
Defendants do not seriously contend that elements 1, 2, 3 and 5 of Count I of plaintiff's complaint are not established in the case at bar. However, this Court is not convinced that there is no genuine issue of fact with respect to elements 4 and 6. A fuller development of the record is necessary for this Court to determine whether the marginability of the bonds in question was a material fact and whether defendants knew, or in the exercise of reasonable care, could have known of the non-marginability of said bonds. Accordingly, plaintiff's motion for summary judgment must be denied.
NOTES
[1] This Court declines to consider defendants' alternative motion to dismiss. Because said motion presents matters outside the pleadings, said motion must be treated as a motion for summary judgment under Rule 56. See Fed.R. Civ.P. 12(a).
[2] Federal Reserve Regulation T, 12 C.F.R. § 220.2(i)(1)(i), requires a bond issuer to have a principal amount outstanding of not less than $25,000,000.00 in order that its bonds be marginal. The issuers of the two bonds in the case at bar each had only $15,000,000.00 in principal outstanding.
[3] Defendants provided this Court with a letter from Basler Electric to plaintiff, dated November 8, 1984. The letter, which apparently relates to the bonds in question, states, in pertinent part, as follows:

This letter is to serve as your authorization to sell these securities at the market. Plus, obtain from Kidder, Peabody any possible compensation that you may be able to obtain from Kidder, Peabody for their improper handling of this transaction. If no additional compensation is obtainable from Kidder, Peabody, you are still authorized to dispose of the securities and forward the funds to Basler Electric Company.